## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JENNIFER WALKER,               )
                               )
              Plaintiff,       )
                               )
v.                             )        Case No. CIV-24-00414-JD
                               )
CITY OF OKLAHOMA CITY,         )
                               )
              Defendant.       )

## ORDER

Before the Court is Defendant The City of Oklahoma City's ("Defendant") Motion for Summary Judgment ("Motion"). [Doc. No. 19]. Plaintiff Jennifer Walker ("Plaintiff") filed a Response. [Doc. No. 21]. Defendant filed a Reply. [Doc. No. 22]. For the reasons outlined below, the Court grants the Motion.

## I.    MATERIAL UNDISPUTED FACTS

Plaintiff worked for the Oklahoma City Police Department as a Latent Print Examiner in the forensic laboratory. [Doc. No. 19 ¶ 1; Doc. No. 21 ¶ 1].

In July 2020, while Plaintiff was cleaning firearms, Major Greg Johnston said, "Look out, a woman with a gun." [Doc. No. 19 ¶ 2; Doc. No. 21 ¶ 2]. Plaintiff reported the incident to her then-supervisor, Yvonne Hill, and Defendant investigated. [Doc. No. 19 ¶¶ 3, 4; Doc. No. 21 ¶¶ 3, 4].

On January 19, 2022, Plaintiff received a written reprimand. [Doc. No. 19 ¶ 5; Doc. No. 21 ¶ 5]. The reprimand describes the underlying behavior as "abusive and offensive behavior toward your fellow employees in the form of a verbal outburst." [Doc.

No. 19-2 at 1].[1] Plaintiff, however, contends the reprimand was "purely retaliatory." [Doc. No. 21 ¶ 5]. On January 21, 2022, Plaintiff filed a sexual harassment and retaliation complaint against Johnston and Ron Williams, the Director of the forensic laboratory. [Doc. No. 19 ¶¶ 6, 7; Doc. No. 21 ¶¶ 6, 7]. Defendant investigated Plaintiff's complaint and did not sustain the allegations. [Doc. No. 19 ¶¶ 8, 9; Doc. No. 21 ¶¶ 8, 9].

Plaintiff also attended a pre-determination hearing in June 2022. [Doc. No. 19 ¶ 10; Doc. No. 21 ¶ 10].[2] On October 4, 2022, Greg Simonson became Plaintiff's supervisor. [Doc. No. 21 at 12 ¶ 13; Doc. No. 22 at 3 (admitting ¶ 13)].[3]

On October 19, 2022, Plaintiff received a memorandum notifying her that she was "being placed on Administrative Leave with pay." [Doc. No. 19-6; Doc. No. 21-11]. The memorandum further advised that "[t]his change in your duty status is being made due to allegations of misconduct while on-duty." [*Id.*]. Plaintiff's pre-determination hearing was on November 30, 2022. [Doc. No. 19 ¶ 14; Doc. No. 21 ¶ 14]. On that same day, Plaintiff filed a complaint alleging harassment and retaliation as a result of her June 2022 and November 2022 pre-determination hearings. [Doc. No. 19 ¶ 15; Doc. No. 21 ¶ 15]. Defendant ultimately terminated Plaintiff, effective December 15, 2022. [Doc. No. 19

---

[1] Plaintiff denies the allegation in ¶ 5 of Defendant's Motion. Plaintiff does not deny the reprimand occurred but classifies it as "purely retaliatory." [Doc. No. 21 ¶ 5].

[2] Plaintiff denies the allegations in ¶ 10 of Defendant's Motion. [Doc. No. 21 ¶ 10]. However, Plaintiff does not deny that the hearing occurred but rather denies that the hearing had a legitimate basis. [*See id.*; *see also* Doc. No. 19-4].

[3] In this order, the Court uses page numbering from the CM/ECF stamp at the top of the filing on the district court docket.

¶ 16; Doc. No. 21-13, Specific Occurrence Performance Report (notifying Plaintiff of findings regarding allegations against Plaintiff and of her termination)].[4]

On October 9, 2023, Plaintiff filed a Charge of Discrimination with the EEOC. [Doc. No. 19 ¶ 17; Doc. No. 21 ¶ 17].

## II.    <u>BACKGROUND</u>

In addition to the facts outlined above, Plaintiff presents additional summary judgment evidence and allegations. [*See* Doc. No. 21 at 9–12]. Plaintiff received annual merit pay increases in 2020 and 2021. [*Id.* at 9 ¶¶ 2, 4]. For the years 2020 and 2021, Plaintiff received performance ratings of acceptable and fully competent. [*Id.* at 9–10 ¶¶ 3, 5]. Plaintiff also received a performance rating of fully competent for the period of October 18, 2021, to October 18, 2022. [*Id.* at 11 ¶ 12].

After Plaintiff filed her January 21, 2022, complaint against Johnston and Williams, she alleges that Johnston and Williams instructed then-supervisor Yvonna Hill to change Plaintiff's time sheets and make copies of her time sheets. [*Id.* at 10–11 ¶ 8]. Williams only requested copies of Plaintiff's time sheets from Yvonna Hill. [*Id.*]. Plaintiff subsequently received a notice for a pre-determination hearing related to Plaintiff's violation of time and attendance policies. [*Id.* at 11 ¶ 9]. After the hearing, Johnston told Plaintiff that the allegations were sustained and that no discipline would be

---

[4] Plaintiff denies the allegations in ¶ 16 of Defendant's Motion based on statements made in Plaintiff's affidavit arguing that the allegations should not have been sustained. [*See* Doc. No. 21 ¶ 16; Doc. No. 21-17]. However, the Specific Occurrence Performance Report included in Plaintiff's exhibits states that she was terminated effective December 15, 2022, and that Defendant sustained four of the five allegations against her. [Doc. No. 21-13].

imposed. [*Id.* at 11 ¶ 11]. Plaintiff claims Johnston refused to provide paperwork memorializing that the allegations were sustained and that no discipline would be imposed. [*Id.*].

Plaintiff initiated this lawsuit against Defendant, alleging sex discrimination and retaliation. [Doc. No. 1 ¶¶ 26–36]. Defendant moves for summary judgment upon both of Plaintiff's claims arguing that (1) Plaintiff failed to exhaust her claim for sex discrimination; (2) Plaintiff fails to establish a prima facie case of sex discrimination; (3) Plaintiff fails to establish a prima facie case of retaliation; and (4) Plaintiff has failed to establish the Defendant's reasons for her termination were pretext. [Doc. No. 19 at 5–15].

## III.    <u>STANDARD OF REVIEW</u>

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (internal quotation marks and citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). A dispute about a material fact is genuine if a rational trier of fact could find in favor of the nonmovant on the evidence presented. *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 882 (10th Cir. 2018); *see also Anderson*, 477 U.S. at 248, 252 (explaining that a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"

and that "there must be evidence on which the jury could reasonably find for the plaintiff" and that "a scintilla of evidence . . . will be insufficient").

In applying this standard, the Court "review[s] the facts and all reasonable inferences those facts support[ ] in the light most favorable to the nonmoving party." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (second alteration in original) (quoting *Evans v. Sandy City*, 944 F.3d 847, 852 (10th Cir. 2019)). "While we view the record in the light most favorable to the party opposing summary judgment, 'the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'" *Phillips v. Calhoun*, 956 F.2d 949, 950 (10th Cir. 1992) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990)).

Ultimately, review of a district court's ruling on summary judgment is "from the perspective of the district court at the time it made its ruling, ordinarily limiting . . . review to the materials adequately brought to the attention of the district court by the parties." *SEC v. GenAudio Inc.*, 32 F.4th 902, 920 (10th Cir. 2022) (citation omitted); *see also Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1259 (10th Cir. 2018) (explaining that "arguments that litigants fail to present before the district court" will be deemed forfeited on appeal); *cf. United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (recognizing that parties represented by counsel "are responsible for advancing the facts and argument entitling them to relief" (citation omitted)).

IV.    **ANALYSIS**

   A.    **Defendant has not met its burden to demonstrate it is entitled to summary judgment on Plaintiff's sex discrimination claim due to failure to exhaust.**

The Court begins with Defendant's first ground for summary judgment—Plaintiff failed to exhaust her claim for sex discrimination. [Doc. No. 19 at 5–6]. Defendant asserts that "Plaintiff's EEOC Charge alleges only sexual harassment and retaliation, resulting from two complaints she filed with the City." [*Id.* at 5]. Defendant further states that "Plaintiff does not mention hostile work environment or sex discrimination at all." [*Id.* at 5–6]. Plaintiff does not respond to Defendant's arguments regarding failure to exhaust. [*See* Doc. No. 21]. However, the Court must still examine whether Defendant has carried its burden of demonstrating the absence of a genuine issue of material fact upon this issue.[5]

To assert a Title VII claim, Plaintiff must have exhausted her administrative remedies by filing a charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1). After receiving her right to sue notice, Plaintiff's claim "is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (internal quotation marks omitted). The Court must

---

[5] Defendant urges the Court to deem Defendant's exhaustion argument confessed because Plaintiff does not address it in her Response brief. [Doc. No. 22 at 5]. Pursuant to Local Civil Rule 7.1(g), the Court has discretion to deem any motion that lacks a response as confessed. The Court declines to do so here because the Court concludes that the face of the EEOC Charge contradicts Defendant's argument.

"liberally construe the plaintiff's allegations in the EEOC charge . . . ." *Id.* (internal

quotation marks omitted).

Accordingly, the Court must examine the scope of Plaintiff's EEOC Charge to

determine "the scope of an EEOC investigation which would reasonably grow out of the

charges actually made in the EEOC charge." *Id.* (internal quotation marks and alteration

omitted). Below is Plaintiff's EEOC Charge:

| DISCRIMINATION BASED ON (Check appropriate box(es).) | | | DATE(S) DISCRIMINATION TOOK PLACE | |
| --- | --- | --- | --- | --- |
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | | | Earliest  **Jul 9, 2020** | Latest  **Dec 13, 2022** |
| ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION | | | | |
| ☐ OTHER *(Specify)* | | | ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*
I began my employment with the City of Oklahoma City on October 17, 2019, working in the Police Department as a Latent Print Examiner. My immediate supervisor was Yvonne Hill. Throughout my employment, I received satisfactory performance appraisals. On July 9, 2020, I received sexist comments from Major Johnston and I reported them to my supervisor, Yvonne Hill. On January 21, 2022, I filed a sexual harassment and retaliation complaint with the City of Oklahoma City against Major Johnston and Lab Director Ron Williams. On June 15, 2022, I received a "Notification of Pre-Determination Hearing" from Major Johnston in the Major's office. On June 21, 2022 at 1:00 p.m., the Pre-Determination Hearing was held in the City of Oklahoma City's Conference room. On October 19, 2022, Major Johnston and Ron Williams entered my office and sent Greg Simonson (current interim supervisor) out of the office. Major Johnston handed me a memo stating that I was being placed on Administrative Leave with pay immediately, with no explanation provided. On November 30, 2022 at 11:43 a.m., I filed an another sexual harassment and retaliation complaint with the City of Oklahoma City. I received a response acknowledging the receipt of the formal complaint from Oklahoma City HR, John Smith, at 2:13 p.m. On November 30, 2022 at 12:30 p.m., I attended the Pre-Determination Hearing without representation. In attendance was Oklahoma City HR John Smith, Lab Director Ron Williams, and Major Bill Patton. On December 13, 2022, I was contacted by Ron Williams and told to come to the lab at 1:00 p.m. to sign my termination paperwork. I arrived at 12:50 p.m. and waited for Ron Williams to let me into the building and escort me to Major Johnston's office, where I was given my termination paperwork to sign. I believe that I am the victim of sexual harassment and retaliation as a result of the complaints that I filed with the City of Oklahoma City.

[Doc. No. 19-1]. As seen above, Plaintiff selected "sex" and "retaliation" as the

appropriate basis for the allegations of "discrimination based on." [*Id.*]. The narrative

provided by Plaintiff exclusively refers to "sexual harassment" as opposed to "sex

discrimination," which is the basis for Plaintiff's claim in her Complaint. [*See id.*].

However, Plaintiff's references to "sexual harassment" relate to the basis of her internal

complaints filed against Johnston and Williams, rather than the basis of her EEOC

Charge. [*Id.*]. The factual allegations raised in the EEOC Charge include "sexist

comments" from Johnston and the charges of misconduct raised against Plaintiff in the

7

pre-determination hearings, all of which are raised in Plaintiff's Complaint. [*Id.*; *see also* Doc. No. 19 at 9 (stating that the basis for Plaintiff's sex discrimination claim is sexist comments and treatment by Johnston)]. When examining the scope of the EEOC Charge for purposes of exhaustion, the Court's role is to determine if "the charge . . . contain[s] facts concerning the discriminatory and retaliatory actions underlying each claim." *Smith*, 904 F.3d at 1164 (internal quotation marks and alteration omitted). Here, the EEOC Charge does contain factual allegations that underlie Plaintiff's claim for sexual discrimination. Accordingly, the Court cannot conclude that Defendant has met its burden of demonstrating the absence of a genuine issue of material fact regarding whether Plaintiff exhausted her sex discrimination claim, and the Court denies Defendant's Motion on this ground.

### B.    Plaintiff has not demonstrated a prima facie case of sex discrimination.

The Court turns next to Defendant's argument that it is entitled to summary judgment because Plaintiff has failed to make a prima facie case of sexual discrimination. [Doc. No. 19 at 7–10]. Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Both parties analyze Plaintiff's claim under the *McDonnell Douglas* framework for analyzing sex discrimination claims based upon circumstantial evidence. [*See* Doc. No. 19 at 7; Doc. No. 21 at 13–14]. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, Plaintiff has the burden of demonstrating a prima facie case of sex discrimination. *Walkingstick Dixon v. Okla. ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321, 1334 (10th Cir. 2025). The burden then shifts to Defendant "to

articulate a legitimate, non-discriminatory reason for its actions." *Id.* (citation omitted). If Defendant does so, the burden once again shifts back to Plaintiff to "prove the employer's articulated reasons are pretextual." *Id.* (citation omitted). Within the scope of Defendant's Motion, Defendant has the initial burden of demonstrating the absence of a genuine issue of material fact on each of these issues.

To make a prima facie case of sex discrimination, Plaintiff must show she is (1) a member of a protected class, (2) who suffered an adverse employment action, and (3) under circumstances which give rise to an inference of unlawful discrimination. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000); *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011). Defendant concedes that Plaintiff is a member of a protected class and that she suffered an adverse employment action. [Doc. No. 19 at 7 ("The City agrees that Plaintiff is a female and thus satisfies the first element in her prima facia case for sex discrimination."); *id.* at 8 ("Plaintiff has identified one adverse employment action—her termination. The City agrees that this event satisfies Plaintiff's second prima facia element.") (internal citations omitted)]. Thus, the Court's inquiry focuses upon whether Plaintiff has adequately demonstrated circumstances which give rise to an inference of unlawful discrimination.

When considering whether Plaintiff has adequately demonstrated circumstances giving rise to an inference of sex discrimination, the inquiry "is a flexible one that can be satisfied differently in varying scenarios." *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005). Accordingly, no rigid formula exists, and the Tenth Circuit has acknowledged

a plaintiff can establish an inference of discrimination in a variety of ways, including the

following:

> actions or remarks made by decisionmakers that could be viewed as
> reflecting a discriminatory animus, preferential treatment given to
> employees outside the protected class, in a corporate downsizing, the
> systematic transfer of a discharged employee's duties to other employees,
> or a pattern of recommending the plaintiff for positions for which she is not
> qualified [or over-qualified] and failure to surface plaintiff's name for
> positions for which she is well-qualified.

*Id.* at 1101 (internal alterations omitted) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*,

92 F.3d 81, 91 (2d Cir. 1996)).

Here, Plaintiff argues the following circumstances regarding how Johnston and

Simonson treated her after she filed a complaint against Johnston give rise to an inference

of discrimination. [Doc. No. 21 at 14–15]. The specific behavior of Johnston identified

by Plaintiff includes that (1) he directed Yvonna Hill to change Plaintiff's time sheets and

make copies of her time sheets; (2) Defendant initiated a pre-determination hearing

against Plaintiff based upon Plaintiff's alleged violation of time and attendance policies;

(3) Johnston refused to give Plaintiff paperwork documenting that the allegations against

Plaintiff at the pre-determination hearing had been sustained but no discipline would be

imposed; and (4) Johnston assigned Simonson to "bait" Plaintiff. [*Id.*]. The specific

behavior of Simonson identified by Plaintiff includes that (1) Plaintiff heard him say he

had been told to "bait" her and record her responses and (2) he micromanaged and overly

scrutinized Plaintiff including asking her where she was going when she left her desk and how long she would be gone. [*Id.* at 15].[6]

The Court concludes, based on the summary judgment evidence produced by Plaintiff regarding the above circumstances, that Plaintiff has not made a prima facie case of sex discrimination. The Court acknowledges that the burden to make a prima facie case of discrimination is not an onerous one. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). "But a common element critical to all prima facie cases is that the plaintiff must demonstrate that 'the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination.'" *Bird v. W. Valley City*, 832 F.3d 1188, 1200 (10th Cir. 2016) (internal quotation marks omitted) (quoting *Plotke*, 405 F.3d at 1100).

Here, Plaintiff has not produced summary judgment evidence from which a reasonable jury could conclude that Johnston's and Simonson's conduct was based upon a discriminatory animus towards Plaintiff because of her sex, such as "a specific gender-

---

[6] The Court notes that the allegations upon which Plaintiff bases her claim for a prima facie case of sex discrimination are disputed by Defendant. Specifically, Defendant denies the allegations and states that they are all based upon the Affidavit of Yvonne Hill, which Defendant asserts is comprised of inadmissible hearsay and speculation. [Doc. No. 22 at 3]. Defendant does not isolate specific portions of the affidavit to which it objects. [*See id.*]. The Court notes that it can consider affidavits at the summary judgment stage, but those affidavits must "set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Because the Court concludes that the proffered summary judgment evidence does not demonstrate circumstances giving rise to an inference of unlawful discrimination, the Court considers the affidavit, without deciding which portions are admissible.

based remark or took a specific gender-based action toward *her*."[7] *Id.* Nor has she argued

that the circumstances demonstrate a pattern or practice of discrimination against female

employees. *See id.* Drawing all inferences in favor of Plaintiff as the non-moving party,

she has presented conduct that is unfair but has framed the conduct as a response to

Plaintiff's complaint against Johnston rather than as discrimination based upon sex. [*See*

Doc. No. 21 at 14 ("In this case, an inference of discrimination is created by how the

Plaintiff was treated after she filed her complaint against Major Greg Johnston.")]. *See*

*Taken v. Okla. Corp. Comm'n*, 125 F.3d 1366, 1370 (10th Cir. 1997) ("Favoritism, unfair

treatment and unwise business decisions do not violate Title VII unless based on a

prohibited classification."). Accordingly, the Court concludes that Plaintiff has failed to

make a prima facie case of sex discrimination, and the Court grants Defendant's Motion

regarding Plaintiff's claim for sex discrimination.

## C.    Plaintiff has not demonstrated a prima facie case of retaliation.

The Court next turns to Defendant's contention that the Court should grant

summary judgment upon Plaintiff's retaliation claim. Defendant argues that Plaintiff has

failed to make a prima facie case of retaliation because she does not present summary

judgment evidence sufficient to show a genuine issue of material fact regarding causation

between a protected activity and her termination. [Doc. No. 19 at 10–12]. Additionally, if

---

[7] Plaintiff does assert that Johnston made a gender-based remark against her in July 2020. She claims that, upon seeing her holding a firearm, he said "Look out, a woman with a gun." [Doc. No. 19 ¶ 2; Doc. No. 21 ¶ 2]. However, in her Response, Plaintiff does not cite to this statement, made two years before her first pre-determination hearing, as a basis for the circumstances giving rise to an inference of sex discrimination. [*See* Doc. No. 21 at 14–15].

the Court concludes Plaintiff has established a prima facie case of retaliation, Defendant

asserts Plaintiff is unable to present fact issues regarding whether Defendant's reasons for

terminating Plaintiff were pretext. [*Id.* at 13–14].

Similarly to Plaintiff's discrimination claim, the Court applies the *McDonnell*

*Douglas* burden shifting analysis to Title VII retaliation claims based upon circumstantial

evidence. "In analyzing retaliation claims, we apply the three-part test established in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792." *Somoza v. Univ. of Denver*, 513 F.3d

1206, 1211 (10th Cir. 2008). Under this framework, Plaintiff has the burden of

establishing a prima facie case of retaliation. *Metzler v. Fed. Home Loan Bank of Topeka*,

464 F.3d 1164, 1170 (10th Cir. 2006). If Plaintiff does so, the burden shifts to Defendant

to "offer a legitimate, non-retaliatory reason for the employment action." *Id.* The burden

then shifts back to the Plaintiff to demonstrate "[D]efendant's proffered reason is

pretextual." *Id.*

To make a prima facie case of retaliation, Plaintiff has the burden to show (1) she

engaged in a protected activity, (2) she experienced a materially adverse employment

action, and (3) a causal connection exists between the protected activity and the adverse

action. *Somoza*, 513 F.3d at 1212. Defendant concedes that Plaintiff has established that

she engaged in a protected activity and experienced a materially adverse employment

action. [Doc. No. 19 at 10 ("As it did for her discrimination claim, the City agrees

Plaintiff's termination was an adverse employment action."); *id.* ("The City also agrees

that Plaintiff filed complaints in July 2020, January 2022 and November 2022, and these

qualify as protected activity."). Accordingly, the relevant inquiry for Defendant's Motion

is whether Plaintiff has presented a genuine issue of material fact regarding whether a causal connection exists between the protected activity and her termination. [*See id.* at 10–12].

To establish a causal connection, Plaintiff relies exclusively upon the short amount of time between the time she filed her last complaint (November 30, 2022) and the time of her termination (December 15, 2022). [Doc. No. 21 at 17–18 ("Therefore, pursuant to *Anderson*, the 15-day period from Plaintiff's November 30 protected activity to her December 15 termination by itself is sufficient to establish causation.") (referring to *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999))]. The Tenth Circuit has allowed "close temporal proximity" to serve as a basis for an inference of a causal connection between protected activity and an adverse action. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) ("The close temporal proximity between the complaint and the termination—just 24 days—is sufficient to allow an inference that a causal connection existed between the internal grievance and the decision to terminate [the plaintiff].") (citing *Anderson*, 181 F.3d at 1179). Accordingly, the period between Plaintiff's internal complaint and her termination, fifteen days, is sufficient to support an inference of a causal connection.

Having established an inference of a causal connection, the Court must determine whether Defendant may rebut that inference or whether the amount of time between the protected activity and Plaintiff's termination alone is sufficient to establish causation. Defendant argues that Plaintiff is not entitled to an inference of causation because

Defendant was already considering terminating Plaintiff at the time she filed her

November 30, 2022, complaint:

> Plaintiff's final complaint, filed November 30, 2022, was filed
> approximately an hour before her scheduled pre-determination hearing.
> While this protected activity occurred less than three months before her
> termination, that does not automatically support an inference of causation.
> The City's decision whether to terminate the Plaintiff was the next step in a
> process that was already under way. The process began when Plaintiff was
> placed on administrative leave with pay, followed by the City's
> investigation, leading to the scheduling and holding of a pre-determination
> hearing.

[Doc. No. 19 at 11]. Plaintiff does not respond to this argument but relies solely on the

time between her November 30, 2022, complaint and her December 15, 2022,

termination to establish causation. [*See* Doc. No. 21 at 17–18].

Defendant cites the Supreme Court's decision in *Clark County School District v.

Breeden* in support of its argument that it can rebut the presumption of causation

supported by temporal proximity. [Doc. No. 19 at 11–12 (citing 532 U.S. 268, 272

(2001))]. In that case, the Supreme Court considered the causal connection between the

filing of a lawsuit by the plaintiff and a statement by the plaintiff's supervisor that she

was considering transferring the plaintiff to a different position. *Id.* "In order to show, as

her defense against summary judgment required, the existence of a causal connection

between her protected activities and the transfer, [the plaintiff] relied wholly on the

temporal proximity of the filing of her complaint on April 1, 1997 and [her supervisor's]

statement to plaintiff's union representative on April 10, 1997 that she was considering

transferring plaintiff to the new position." *Id.* (internal quotation marks and alterations

omitted). The Court concluded that the district court properly considered that, despite the

temporal proximity of these activities, the plaintiff's supervisor did not actually learn of the complaint until after she made the statement regarding the plaintiff's potential transfer. *Id.* at 272–73. The Court also rejected an inference of causation based upon the one-month period between when the plaintiff's supervisor learned of the plaintiff's lawsuit and when the plaintiff was transferred. *Id.* at 272. The Court stated that the amount of time was "immaterial in light of the fact that [the employer] concededly was contemplating the transfer before it learned of the suit." *Id.* "Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Id.*

Based upon the Supreme Court's analysis in *Clark County School District*, the Court concludes that Defendant may present summary judgment evidence to rebut the inference supported by the close temporal proximity between Plaintiff's November 30, 2022, complaint and her December 15, 2022, termination by demonstrating that Defendant was already contemplating Plaintiff's termination before Plaintiff filed the complaint. On October 19, 2022, Defendant placed Plaintiff upon administrative leave with pay "due to allegations of misconduct while on-duty." [Doc. No. 19-6]. In a November 18, 2022, notice of her pre-determination hearing regarding the allegations of misconduct, Defendant notified Plaintiff that, following the hearing, "[p]ossible disciplinary consequences may include a range of disciplinary actions up to and including termination." [Doc. No. 19-7 at 2]. Accordingly, the Court concludes that Defendant has adequately rebutted any inference of causal connection by demonstrating Plaintiff's

termination was already contemplated at the time she filed her November 30, 2022, complaint. Because Plaintiff has chosen not to respond to Defendant's argument and instead relies solely on the close temporal proximity between her November 30, 2022, complaint and her December 15, 2022, termination to establish an inference of a causal connection, Plaintiff has failed to establish a prima facie case of retaliation. Accordingly, the Court grants Defendant's Motion regarding Plaintiff's retaliation claim.

## V.    <u>CONCLUSION</u>

For the reasons outlined above, the Court GRANTS Defendant's Motion for Summary Judgment. A separate judgment will follow.

IT IS SO ORDERED this 3rd day of February 2026.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE